GLENDON RICKER, PLAINTIFF, v. SHIRLEY LAWSON, DI-
RECTOR, BLOOMINGDALE MUNICIPAL WELFARE DE-
PARTMENT, DEFENDANT.

Juvenile and Domestic Relations Court
Passaic County

December 5, 1977.

*Ms. Elizabeth R. Jones,* of the Passaic County Legal Services, for plaintiff.

*Messrs. D'Angelo and Clemack* for the defendant (*Mr. John G. D'Angelo,* of counsel and on the brief).

FERRANTE, P. J. J. D. R. C. At issue in this matter is whether a municipality, as defined in *N. J. S. A.* 44:8–108, is bound by the rules and regulations promulgated by the Commissioner for the carrying out of the provisions of the General Public Assistance Law, *N. J. S. A.* 44:8–107 to 44:8–145, if it does not elect to apply for state aid which is also provided for under the law. There is no case that we have found that is directly on point.

The matter is before the court on application of plaintiff Glendon Ricker for summary review of action taken by defendant Shirley Lawson, Director of Welfare of the Borough of Bloomingdale, with regard to the extent of plaintiff's right, if any, to receive public assistance. Jurisdiction is conferred upon this court by virtue of *N. J. S. A.* 44:1–36 which provides:

The director of welfare in the municipality shall determine who are to be relieved by him, subject to an application by any person on at least five days' notice, to the juvenile and domestic relations court, by complaint, in writing, applying for a summary review and

determination by the court of the action of the director as to the extent and amount of relief, if any, to be rendered.

Plaintiff, a 40-year-old single male, resided in the Borough of Bloomingdale for over six years prior to applying for public assistance in November 1976. He had worked regularly for over 16 years until November 1975, when he felt physically exhausted and completely unable to work. Upon terminating his employment he sought both medical and psychological help and is, at this time, attending group therapy sessions five times a week. Plaintiff also applied for state disability benefits and received them for a period of 30 weeks. Subsequent to this, and after exhausting his savings and failing to secure any other form of welfare benefit, he applied to defendant, Director Lawson for public assistance. He was found eligible and provided with payments for rent and food, although not on a regular monthly basis, until the end of April 1977. The total amount provided for this six-month period was $954, an average of $159 a month.

On May 12, 1977 plaintiff received a pre-printed form with certain information typed in (italicized below) from the Bloomingdale Welfare Department entitled, "Notice of Intention to terminate assistance under the General Assistance Program," signed by Director Lawson. It was dated April 29, 1977 and provided in part:

This is to notify you that it appears you are no longer eligible to continue to receive benefits under the General Assistance Program because *failure to provide medical evidence of illness and failure to acquire work* and in accordance with section *325 and 327* of the General Assistance Manual, your assistance will be terminated as of *April 27, 1977*.

Under this last date was the following: "Date to be entered shall be not less than ten (10) calendar days following the date of this notice." (In spite of this preprinted warning, this date is obviously two days prior to the date of the notice.)

The form also advised plaintiff that he had the right to request a hearing within ten days of the mailing date of the notice and to be represented by an attorney. It further stated: "If you should request a hearing, assistance will be continued unreduced until the hearing is held and a final decision is made." On the bottom of the form the following is printed: "New Jersey Department of Institutions and Agencies — Division of Public Welfare."

A request for a hearing was timely made. The hearing was held on July 20, 1977. According to the minutes of this hearing, it was resolved that a final decision would not be made until plaintiff's psychiatric testing results were received. Plaintiff was to be examined on July 21, 1977. A final decision to deny future relief was not made until September 23, 1977, ten days after plaintiff initiated this action.

Subsequent to the hearing, on August 28, 1977, plaintiff was evicted from his apartment for nonpayment of rent. He was forced to spend two nights sleeping in a car until, with the help of defendant, he located a room at the Passaic YMCA where he is still living.

During the four-month period between the preparation of the aforementioned notice of termination and August 31, 1977, plaintiff received no benefits from the defendant.

Plaintiff filed his complaint with this court on September 13, 1977 and sought a determination of the extent and amount of relief, if any, to which he was entitled from defendant for the period subsequent to the preparation of the notice, and a determination as to whether he is entitled because of his present physical and mental condition to future relief. In light of the fact that plaintiff has now been found eligible to receive general assistance payments from the City of Passaic which, in turn, is being reimbursed by Bloomingdale, the application for the latter relief has been withdrawn. Our concern is with whether the plaintiff is entitled to receive any relief for the four-month period, May through August.

Plaintiff contends that defendant is subject to the General Public Assistance Law, *N. J. S. A.* 44:8–107 et seq., and to the rules and regulations promulgated by the Commissioner pursuant to it and contained in the *New Jersey General Assistance Manual.*

■ Defendant admits that she is subject to the General Public Assistance Law, but, relying on *N. J. S. A.* 44:8–111(d) and *Harris v. Emory,* 138 *N. J. Super.* 198, 208 (J.D.R. Ct. 1975), contends that she is not subject to the rules and regulations promulgated by the Commissioner because she had not elected to apply for state aid in financing her local assistance program. Defendant also contends that she has the discretion, pursuant to *N. J. S. A.* 44:8–127, to summarily revoke any order for continued assistance whenever it appears that the recipient no longer qualifies under the law, and that she is under no obligation to provide the recipient with the aforediscussed notice or to continue payments until the date of the hearing, again because Bloomingdale did not elect to obtain State aid. Defendant makes this contention in spite of the fact that she took it upon herself to advise plaintiff in the aforementioned written notice that he had definite rights promulgated in the *Public Assistance Manual.* Defendant further argues that it complied with the mandates of the *Manual* to a "reasonable" degree, and that, in any event, plaintiff failed to prove that he was medically unable to work, as that term is used in the *Manual.* (See *New Jersey General Assistance Manual,* c. III, § 327.) In view of the manner in which we resolve the matter before the court, we do not reach the factual issue as to whether plaintiff adequately substantiated through current medical information his ability to work because of a physical or mental condition.

As stated, the issue is whether a municipality, as defined by *N. J. S. A.* 44:8–108, is bound by the rules and regulations promulgated by the Commissioner for the carrying out of the provisions of the General Public Assistance Law, *N. J. S. A.* 44:8–107 through 145, if it does not elect to

apply for the state aid which is also provided for under the law.

*N. J. S. A.* 44:8–111(d) provides that the Commissioner shall

> * * * (d) Promulgate, alter and amend from time to time such rules, regulations and directory orders as may be necessary for the administration of State aid and for carrying out of any provisions of law regulating the same and of the provisions of this act, which rules, regulations and orders shall be binding upon the various municipalities * * *.

Defendant contends that the presence of the words "State aid" in this section prevents the Commissioner from promulgating regulations for the carrying out of the Public Assistance Law that are binding on municipalities that do not elect to apply for such aid.

Defendant cites *Harris v. Emory, supra* at 208, to support her contention. This court finds that case inappropriate for the resolution of the issue before it. The fact that the Commissioner has the power to withhold State aid under *N. J. S. A.* 44:8–112(d) from municipalities that do not follow the regulations does not demonstrate that municipalities that do not apply for state aid are not bound by the regulations promulgated to carry out the provisions of the act.

Furthermore, *N. J. S. A.* 44:8–111(d) also authorizes the Commissioner to promulgate rules, regulations and orders "for the carrying out * * * of the provisions of this act, which rules, regulations and orders shall be binding upon the various municipalities." In addition, *N. J. S. A.* 44:8–111(f) provides that the Commissioner shall

> * * * (f) Formulate, promulgate and enforce standards for investigation, allowance and supervision of grants for public assistance and forms and procedures necessary to the proper administration and recording thereof * * *.

"Public assistance" is defined by *N. J. S. A.* 44:8–108:

"Public Assistance" means assistance rendered to needy persons not otherwise provided for under the laws of this State, where such persons are willing to work but are unable to secure employment, due either to physical disability or inability to find employment, and includes what is commonly called "relief" or "emergency relief" * * *.

It is also significant that among the provisions of the Public Assistance Law which must be administered in a uniform manner according to the rules promulgated by the Commissioner are *N. J. S. A.* 44:8–114, which provides:

*Every municipality* shall provide assistance to the persons eligible thereto, residing therein or otherwise when so provided by law, which shall be administered by a local assistance board according to law and in accordance with this act *and with such rules and regulations as may be promulgated by the Commissioner.*
[Emphasis supplied]

and *N. J. S. A.* 44:8–124, which provides:

Continued assistance under this act may be provided in such a manner as to meet any or all of the several needs of, or as may be necessary to protect the well-being of, the persons to whom assistance is to be granted such as the provision of food, milk, shelter, fuel, clothing or medical care and it may be provided by: a) cash assistance or b) any other method authorized by the local assistance board, approved by the governing body, *and complying with the regulations of the Commissioner.*
*The extent of individual grants shall be determined in accordance with the standards and budgets authorized by the Commissioner.*
[Emphasis supplied]

The above sections refer to all municipalities and make no mention of state aid. This court holds that these sections express a clear intention of the Legislature to insure a uniform state-wide administration of public assistance through rules and regulations promulgated by the Commissioner and by means of standards and budgets authorized by the Commissioner. The only reasonable construction of these sections is that they apply to all municipalities regardless of whether they take advantage of the state aid which is avail-

able. To hold otherwise would undermine the stated public policy of this State, that

* * * every needy person shall, while in the State, be entitled to receive such public assistance as may be necessary, and that the furnishing of such public assistance is primarily the duty of the municipalities and of civic and charitable organizations *but that all needy persons not otherwise provided for under the laws of this State hereafter receive public assistance pursuant to law and the provisions of this act.* [*N. J. S. A.* 44:8–109; emphasis supplied]

Regardless of whether a municipality elects to apply for state aid, it is still an agency of the State covered by the act and is required to implement statutory declared state policy. *Wagner v. Newark,* 24 *N. J.* 467, 478 (1957). If every municipality were in a position to establish its own procedures and standards for implementing the act, needy persons would be encouraged to shop around and seek out the cities that would provide maximum benefits and coverage. This would create an intolerable situation and place an unfair burden on those municipalities that follow State regulations. To uphold defendant's argument would be tantamount to declaring that the intention of the Legislature was to encourage this "municipality shopping" and the resulting disastrous impact on municipal structure. This court cannot accept such an interpretation of the Public Assistance Law.

In further support of this construction is the very title of the act:

An Act *concerning public assistance,* providing State aid therefor, *regulating the administration thereof,* and repealing certain statutes relating thereto (Revision) L. 1947, c. 156, pg 692. [Emphasis supplied]

It is clear that the words "therefor," "thereof" and "thereto" all refer back to "public assistance." A stated purpose of the act is thus to regulate the administration of public assistance.

"Whether the police power to deal with a subject should be granted without restriction or should be treated in one

way or another is for the Legislature to say." *Inganamort v. Fort Lee*, 62 *N. J.* 521, 530 (1973).

This court holds that the Legislature clearly intended uniform state-wide administration of public assistance by means of regulations, rules and standards adopted by the Commissioner. These regulations, rules and standards apply to all municipalities regardless of whether a municipality applies for state aid.

The opinion of the Commissioner as to the issue before us is clearly set forth in the *General Assistance Manual*. Chapter 1, § 124 thereof provides:

Conformance with State standards — regardless of State financial participation, municipalities must administer general assistance in conformance with standards, policies, procedures, and regulations developed by the Division of Public Welfare. This requirement shall include adherence to additional policy directives as distributed by official letters signed by the Director of the Division of Public Welfare, as well as to the regulations set forth in this Manual.

This position is also expressed in the following sections of the *General Assistance Manual*:

Chapter I, § 111:
 * * * The New Jersey General Assistance Manual is a compilation of rules on State Law which govern the provision of assistance to needy persons by *all* municipalities * * * [Emphasis supplied]
Chapter I, § 112:
 * * * The Director shall be responsible for the determination of applicant eligibility in accordance with State Law and regulations.
Chapter I, § 113:
 "* * * There must be a strict adherence to State Law and regulations. Requirements other than those established pursuant to State Law and regulations shall not be imposed as a condition of receiving assistance."
Chapter II, § 214.5:
 The Municipal Director of Welfare, the Chief Administrative Officer of the LAB, is responsible for ensuring equitable and efficient administration of general assistance within the community, *in accordance with standards and policies set forth in this manual.* [Emphasis supplied]

Chapter IV, § 401.1:
\* \* \* In order to achieve equity among individuals and with other public assistance programs within the State, the State Division of Public Welfare has been given responsibility for establishing, in accordance with State Law and regulations procedures by which all payments of general assistance are to be made.

Rules and regulations promulgated by the Commissioner have the benefit of the presumption of validity and regularity generally afforded administrative regulations. *Pascucci v. Vagott,* 71 *N. J.* 40, 50 (1976).

The regulations, of course, must be reasonable and in overall furtherance of the broad welfare assistance goals of the Legislature. *Motyka v. McCorkle,* 58 *N. J.* 165, 179 (1971). The aforecited sections of the *General Assistance Manual* do reasonably further uniform and equal administration of the public policy of the State in that "every needy person shall \* \* \* be entitled to receive such public assistance as may be necessary, and that the furnishing of such public assistance is primarily the duty of the municipalities \* \* \*" *N. J. S. A.* 44:8–109. See also, *Purnell v. Bridgeton,* 139 *N. J. Super.* 259, 262–263 (J.D.R. Ct. 1976).

In light of the foregoing this court holds that defendant Welfare Director Lawson, although she was elected not to apply for state aid, is bound by the rules and regulations promulgated by the Commissioner and contained in the *New Jersey Public Assistance Manual.*

The *Public Assistance Manual* contains definite procedures with regard to notices and hearings and the rights of the welfare applicants/recipients. See, generally, c. VII, §§ 700 through 727.

█ For purposes of deciding this matter, the following sections are expressly significant:

Section 701 provides that
\* \* \* an individual who \* \* \* receives general assistance is entitled to a written notice of termination of such assistance. Moreover, \* \* \* a recipient has a right upon his/her request, to a local hearing \* \* \* in accordance with the procedures established in this chapter.

Section 711 requires timely notice.

Section 711.1 defines timely notice of termination as notice "no later than ten days before the date such action will be taken."

Section 722.2 declares that

* * * when a local hearing is requested, within ten days of the mailing date of a notice of adverse action, *assistance shall be continued unreduced until the hearing is held and the decision rendered by the hearing officer.* [Emphasis supplied]

It is significant that defendant chose to utilize the notice form provided in the appendix of the *Public Assistance Manual,* which form advises the recipient of his rights as promulgated in the *Manual,* and yet now contends that the borough of Bloomingdale is not bound by its said regulations. This court finds that defendant violated the aforecited regulations, including, but not limited to, § 711.1 which provides for a timely notice, and § 722.2 which provides for continued unreduced assistance until the hearing is held and the decision is rendered by the hearing officer. In this case, although the hearing was held on July 20, 1977, no final decision was reached until September 23, 1977.

*N. J. S. A.* 44:8-124 provides that "the extent of individual grants shall be determined in accordance with the standards and budgets authorized by the Commissioner." This furthers state policy because

* * * the establishment of a fixed sum grant such as this ensures state-wide uniformity and equality in administering welfare programs, and thus eliminates possible "shopping" by recipients to determine the largest grants. This system also enables a municipality to anticipate welfare costs and budget itself accordingly. Furthermore, since living costs are considered in arriving at the amounts fixed in the Budget Manual and periodic adjustments made accordingly, the basic 'needs' of welfare recipients are met by the municipality as defined by the Commissioner. [*Purnell v. Bridgeton, supra* at 263]

According to Schedule I of the *General Assistance Manual,* G. A. 2.300A (rev. 7/74), the maximum assistance allowance for a single adult is $178 per month. This court finds that plaintiff is entitled to a supplemental grant of

$712, or $178 for each of four months, May through August.

This court would also point out that even if defendant were not bound by the *New Jersey Public Assistance Manual*, plaintiff would still be entitled to the rudiments of due process as outlined by the United States Supreme Court in *Goldberg v. Kelly*, 397 *U. S.* 254, 90 *S. Ct.* 1011, 256 *L. Ed.* 2d 287 (1970). *Goldberg* held that procedural due process guaranteed by the 14th Amendment is applicable to the termination of welfare benefits when said benefits, as in New Jersey (see *N. J. S. A.* 4:8–109), are a matter of statutory entitlement for persons qualified to receive them. Rudimentary due process in this setting includes, according to *Goldberg*, timely and adequate notice detailing the reasons for a proposed termination of benefits, an opportunity to be heard, the right to be represented by counsel if the recipient so desires, the right to cross-examine adverse witnesses, an impartial hearing officer and decision-maker who did not participate in making the decision under review, and a final decision based on the evidence adduced at the hearing, which includes a statement of the reasons for the determination and indicates the evidence relied on, *all prior* to the termination of benefits.

This court finds that defendant herein did not meet these minimum standards. Benefits were terminated when the notice was prepared, prior to the hearing and prior to the final decision. Consequently, even if the regulations promulgated by the Commissioner did not apply to defendant, plaintiff would still be entitled to a supplemental grant equal to the amount aforementioned.

Additionally, if defendant's arguments were upheld by the court, it would be tantamount to declaring that the intention of the Legislature was to permit "municipality shopping" by welfare clients to obtain maximum benefits. The obvious problems which would be raised by such an interpretation need not be further detailed here to illustrate the disastrous impact it would have on municipal structure.

The court, therefore, enters judgment in favor of Glendon Ricker and against Shirley Lawson, Director, Bloomingdale Municipal Welfare Department in the amount of $712 for the four-month period, May through August, together with interest from the date of the filing of the complaint.